## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### CASE NO: 15-6609-CV

**ANA MARGARITA MARTINEZ,**

     **Plaintiff,**

**v.**

**JP MORGAN CHASE & CO.,**

     **Defendant.**

---

### <u>COMPLAINT</u>

Plaintiff, Ana Margarita Martinez, sues JP MORGAN CHASE & CO., and for her Complaint alleges:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter, under 28 U.S.C. § 1331, because certain claims asserted arise under the Constitution, laws, or treaties of the United States.  This Court also has subject matter jurisdiction over this matter, under 28 U.S.C. § 1332, because the Plaintiff, a United States Citizen residing in Miami, Florida, and Defendant JP MORGAN CHASE & CO. ("JPMC"), incorporated in Delaware with its principal office and headquarters in New York, New York, are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest, attorney's

fees and costs.

2.     This Court has personal jurisdiction over Defendant JPMC because JPMC committed fraudulent and/or tortious acts and/or omissions within the Southern District of New York by knowingly and purposefully processing commercial transactions in the form of wire transfers involving the Republic of Cuba and/or its agencies and instrumentalities in violation of the Export Administration Act of 1979, codified at 50 U.S.C. App. 2405(j), § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002),[1] and Cuban Assets Control Regulations 31 C.F.R. part 515 ("CACR"), collectively referred to herein as "US Sanctions Laws."

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in this judicial district.

## PARTIES

4.     Plaintiff, Ana Margarita Martinez, is a citizen of the state of Florida. Plaintiff is a judgment creditor of the Republic of Cuba, (also referred to herein as "Cuba").

5.     Defendant JPMC is a federally chartered bank that operates approximately 5,650 bank branches throughout the United States, manages

---

[1] See historical note following 28 U.S.C. § 1610.

[2] 50 U.S.C. App. 2405(j).

[3] SDNY Case DE 4 filed on August 1, 2007, DE 14 filed on December 4, 2007, and DE 29 filed on

assets totaling approximately $2.6 trillion globally.  JPMC is incorporated in Delaware, but resides and maintains headquarters in New York, New York.

## GENERAL ALLEGATIONS

### *Application of U.S. Sanctions Laws*

6.     Pursuant to U.S. Sanctions Laws, banks are prohibited from processing or facilitating any commercial transactions involving countries designated as state sponsors of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 ("Export Administration Act"),[2] and all such transactions must be blocked and reported to the Office of Foreign Assets Control ("OFAC").

7.     At all times relevant to this action, the Republic of Cuba was designated as a state sponsor of terrorism under the Export Administration Act, and a sanctioned country.  As a result, from at least in or about February 1992 through at least December 1, 2014, all transactions involving the Republic of Cuba, its agencies, instrumentalities or any person or entity that OFAC designates as a "specially designated national" ("SDN") of the Republic of Cuba should have been blocked and reported to OFAC.

8.     In addition, U.S. Sanctions Laws permit judgment creditors like the Plaintiff to execute and collect judgments against blocked funds that a

---

[2] 50 U.S.C. App. 2405(j).

sanctioned country such as the Republic of Cuba, or its agencies or instrumentalities, have an ownership or beneficial interest in.  See TRIA.

### *Plaintiff's Judgments & Execution*

9.     On March 9, 2001, the Plaintiff was awarded $7,175,000.00 in compensatory damages for emotional distress in the in the matter of *Martinez v. The Republic of Cuba*, State of Florida, Eleventh Judicial Circuit Case No. 99-18008 ("Florida Judgment"), against the Republic of Cuba, pursuant to the Foreign Sovereign Immunities Act. 28 U.S.C. §§ 1602, *et seq*., ("FSIA"), based upon tortious acts the Republic of Cuba directed and committed in the United States against the Plaintiff during the time frame that the Republic of Cuba was a sanctioned country. A copy Florida Judgment, attached and incorporated herein as *Exhibit "A*."

10.     On July 23, 2007, Plaintiff filed a complaint in Southern District of New York Case Number 07-cv-6607 (VM) ("SD NY Case") seeking recognition of the Florida Judgment, pursuant to the Full Faith and Credit clause of Article IV, § 1 of the United States Constitution as implemented by 28 U.S.C. § 1738.

11.     On August 1, 2007, an Order of Attachment, directed at JPMC and other entities, issued in the SD NY Case. On August 15, 2007, the United States

Marshal's Service served the Order of Attachment on JPMC.[3]   On February 28, 2008, the U.S. Marshal's Service filed a process receipt and return of service documenting that JPMC did not deliver any funds to the U.S. Marshal's Service in response to the Writ of Attachment.  *See Exhibit B-1.*   In addition, the U.S. Marshal's process receipt attached a letter from JPMC's counsel that failed to disclose that JPMC failed to block, hold or identify any the Unblocked Cuban Assets that are described in Paragraphs 15 to 19, *infra*, that are the subject of the sanctions violations referenced in JPMC's settlement attached and incorporated herein as *Exhibit E.* A copy of the Order of Attachment and proof of service are attached at *Composite Exhibit "B,"* and are incorporated by reference herein.

12.    On December 7, 2007, a Default Judgment ("SD NY Judgment") issued in the SD NY Case against the Republic of Cuba.  The Default Judgment recognized the Florida Judgment pursuant to the Full Faith and Credit Clause, and ruled that as of the date of entry of the SD NY Judgment, the principal and interest due the Plaintiff on the Florida Judgment was $12,197,102.60.  See Article IV, § 1, U.S. Const., 28 U.S.C. § 1738.   The SD NY Judgment provided that interest shall accrue on the SD NY Judgment at the federal statutory rate provided in 28 U.S.C. § 1961 until satisfied in full.  A copy of the SD NY

---

[3]  SDNY Case DE 4 filed on August 1, 2007, DE 14 filed on December 4, 2007, and DE 29 filed on February 28, 2008.

Judgment is attached at *Exhibit "C,"* and is incorporated by reference herein.

13.     On March 13, 2008, following the issuance of the SD NY Judgment, on Plaintiff obtained and caused the U.S. Marshal's Service to serve a Writ of Execution in the SD NY Case on JPMC in order to levy upon any blocked bank accounts in which the Republic of Cuba or any of its agencies or instrumentalities had an interest.   A true and exact copy of the Writ of Execution and proof of service of said Writ are attached as *Composite Exhibit "D-1."*

14.     In or about March 17, 2008, the only funds JPMC identified in response to Plaintiff's Writ of Execution were taxes due the Republic of Cuba held in two JPMC accounts[4] for AT&T's wholly owned subsidiary, Cuban American Telephone and Telegraph Company ("Tax Funds").      No other blocked accounts or funds were identified. *See Exhibits "D-2" and "D-3."* Further, in or about March 17, 2008, JPMC failed to disclose that JPMC failed to block, hold or identify any the Unblocked Cuban Assets that are described in Paragraphs 15 to 19, *infra*, that are the subject of the sanctions violations referenced in JPMC's settlement attached and incorporated herein as *Exhibit E*.  See *Exhibits "D-2 and "D-3,"* incorporated by reference herein.

15.     As a direct and proximate result of JPMC's failure to block funds or

---

[4] AT&T Long Lines Account and the Florida Land Sale Account which contain funds deposited by AT&T.  See Case No. 07cv7974-VM at DE 48, para 10, 20.

transactions involving the Republic of Cuba between December 12, 2005, to

on or about March 31, 2006, JPMC obtained pecuniary benefits and the

Plaintiff was unable to execute upon the unblocked funds to partially or fully

satisfy her judgment against the Republic of Cuba, its agencies or

instrumentalities when she served a writ of attachment in 2007 and writ of

execution in 2008.

### Defendant's Settlement Agreement with OFAC

16.    From at least December 12, 2005 through March 31, 2006, JPMC,

knowing that wire transfers or payments involved the Republic of Cuba,

entities or instrumentalities of the Republic of Cuba or on OFAC's SDN List for

the Republic of Cuba ("Prohibited Transactions"), engaged in a systematic

pattern of illegal conduct of facilitating wire transfers involving the Prohibited

Transactions and failed to block such funds in violation of U.S. Sanctions Laws.

17.    From at least December 12, 2005 through at least August 25,

2011, JPMC concealed from the public the Prohibited Transactions it

committed.

18.    On August 25, 2011, JPMC entered into a Settlement Agreement

with OFAC for the purpose of resolving the potential civil liability JPMC faced

for engaging in the Prohibited Transactions and failing to block funds other

than the Tax Funds identified in response to the Plaintiff's March 13, 2008

Writ. ("OFAC Settlement Agreement").   The terms of the OFAC Settlement Agreement required JPMC to pay a $88,300,000.00 fine for violations of U.S. Sanctions Laws for transactions involving the Republic of Cuba and other sanctioned countries.   The OFAC Settlement Agreement described JPMC's illegal conduct involving the Republic of Cuba as follows:

> "From on or about December 12, 2005, to on or about March 31, 2006, JPMC processed 1,711 electronic funds transfers in which the Government of Cuba or a Cuban national had an interest, in the aggregate amount of $178,530,954.27, in apparent violation of the prohibition against dealing in property in which Cuba or a Cuban national has an interest, 31 C.F.R. Section 515.201."

See *Exhibit "E,"* OFAC Settlement Agreement at p. 1, § II, ¶ 1.

19.   As a direct and proximate result of JPMC's violations of U.S. Sanctions Laws or conduct involving Prohibited Transactions, JPMC failed to identify, disclose to OFAC, block and hold over $178 million in transactions involving the Republic of Cuba, its agencies, instrumentalities and individuals or entities on OFAC's SDN list.  ("Unblocked Cuban Assets").

20.   In addition, as a direct and proximate result of JPMC's violations of US Sanctions Laws or conduct involving Prohibited Transactions, JPMC failed to make the Unblocked Cuban Assets available to the Plaintiff to satisfy her judgment.

## COUNT I -- CONVERSION

21.     Plaintiff realleges and incorporates by reference paragraphs 1 through 20 of this Complaint as if fully stated herein.

22.     As a judgment holder against the Republic of Cuba, at the time of service of the Order of Attachment on August 15, 2007 and service Writ of Execution on March 13, 2008 in her SD NY Case, Plaintiff had a possessory interest in the Unblocked Cuban Assets and Prohibited Transactions.

23.     At all times relevant to this action JPMC maintained dominion and control over the Unblocked Cuban Assets and Prohibited Transactions and failed to block said assets and make them available for levy, attachment or turn-over to the Plaintiff, thereby disrupting Plaintiff's property interest in derogation of her rights and her possessory interest in the Unblocked Cuban Assets and Prohibited Transactions.

24.     JPMC's failure to block and/or disclose the existence of the Unblocked Cuban Assets and Prohibited Transactions, constituted a wrongful withholding of said assets, and fraudulent misrepresentation(s) to the Plaintiff and U.S. Marshal's Service, when the Plaintiff, by and through the US Marshals Service, sought to levy upon them in satisfaction of her judgment. This was the direct and proximate cause of Plaintiff's injury.

25.     As a direct and proximate result of JPMC's failure to block and/or

disclose the existence of the Unblocked Cuban Assets and Prohibited Transactions, Plaintiff was unable to collect the full amount of her SDNY judgment, and suffered injuries and damages in the amount of the unpaid balance of her SD NY Judgment plus interest from December 7, 2007 to date. As of the date of filing of this action, the unpaid balance plus accrued interest due on the Plaintiff's SD NY Judgment is over $14.5 million dollars.

WHEREFORE, the Plaintiff respectfully demands that a judgment be entered in this action in her favor against the Defendant awarding the Plaintiff as follows:

A.   Actual, consequential and incidental damages in the amount to be determined at trial, including the unpaid balance of the SD NY Judgment plus all accrued interest due.

B.   Treble damages not less than the unpaid balance of the SD NY Judgment plus all accrued interest due.

C.   Reasonable attorneys fees, costs and litigation costs.

D.   Prejudgment interest as provided in the SD NY Judgment, and post judgment interest, and

E.   Such other and further relief as this Court deems appropriate.

## COUNT II -- FRAUD

26.     Plaintiff realleges and incorporates by reference paragraphs 1 through 20 of this Complaint as if fully stated herein.

27.     Upon information and belief, Defendant JPMC attempted to defraud judgment creditors of the Republic of Cuba by disguising and materially misrepresenting or omitting the true nature and indicia of ownership of Unblocked Cuban Assets, Prohibited Transactions and/or the 1,711 electronic funds transfers processed as set forth in the OFAC Settlement Agreement, attached and incorporated herein as Exhibit "E."

28.     By materially misrepresenting or omitting the true nature of Unblocked Cuban Assets, Prohibited Transactions and/or the 1,711 electronic funds transfers described in the OFAC Settlement Agreement, JPMC knowingly sought to thwart the ability of judgment creditors of the Republic of Cuba to collect on the Republic of Cuba's property interest in the approximately $180 million in electronic fund transfers, Unblocked Cuban Assets and Prohibited Transactions that should have been blocked, disclosed to OFAC, set aside, and upon levy, disclosed and made available for attachment by judgment creditors such as Plaintiff.

29.     Plaintiff justifiably relied on JPMC's representations that it was not in possession of any property, and/or omissions that it was in possession

of property in the name of the Republic of Cuba or any of its agencies or instrumentalities as alleged in Paragraphs 11 to 18 of this Complaint.

30.    As a result of JPMC's fraudulent conduct, Plaintiff suffered damages in the amount of at least $14.5 million dollars.

31.    WHEREFORE, the Plaintiff respectfully demands that a judgment be entered in this action in her favor against the Defendant awarding the Plaintiff as follows:

A.    Actual, consequential and incidental damages in the amount to be determined at trial, including the unpaid balance of the SD NY Judgment plus all accrued interest due.

B.    Treble damages not less than the unpaid balance of the SD NY Judgment plus all accrued interest due.

C.    Reasonable attorneys fees, costs and litigation costs.

D.    Prejudgment interest as provided in the SD NY Judgment, and post judgment interest, and

E.    Such other and further relief as this Court deems appropriate.

## COUNT III -- RICO:  WIRE FRAUD

32.    Plaintiff realleges and incorporates by reference paragraphs 1 through 20 of this Complaint as if fully stated herein.

33.    At all relevant times, JPMC and the Republic of Cuba, its agencies, instrumentalities and other sanctioned Republic of Cuba individuals or entities, were an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that was engaged in and the activities of which affected, interstate or foreign commerce.

34.    At all relevant times, JPMC was a "person" within the meaning of 18 U.S.C. § 1961(3).

35.    Defendant JPMC received income that was derived, directly or indirectly, from a pattern of racketeering activity in which JPMC participated as a principals, and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in the acquisition of an interest in, or the establishment or operation of, an enterprise, in violation of 18 U.S.C. § 1962(a).

36.    JPMC and the Republic of Cuba, its agencies, instrumentalities and other sanctioned Cuban individuals or entities conducted or participated and/or conspired to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, proximately causing injury to the Plaintiff's, in violation of 18 U.S.C. §§ 1962(c) and (d).

37.    Based upon information and belief, JPMC engaged in the following

predicate acts constituting a "pattern of racketeering," as defined by 18 U.S.C. § 1961(1):

    a.  As set forth specifically in the factual allegations of this Complaint, JPMC and the Republic of Cuba, its agencies, instrumentalities and other sanctioned Cuban individuals or entities perpetrated a fraudulent scheme between at least as early as December 12, 2005 and continuing until at least March 31, 2006.

    b.  This scheme involved avoiding OFAC regulations through, among other things, processing 1,711 electronic fund transfers totaling approximately $178.5 million between the relevant dates set forth in the OFAC Settlement Agreement involving the Republic of Cuba in violation of U.S. Sanction Laws and CACR.

    c.  In or about November 2005, another financial institution alerted JPMC that JPMC was processing wire transfers involving the Republic of Cuba, its agencies, instrumentalities and/or other sanctioned Cuban individuals or entities through one of its correspondent accounts.

    d.  After such notification, JPMC conducted an investigation into the wire transfers it had processed.

    e.  The results of this investigation were reported to JPMC

management and supervisory personnel, which confirmed that transfers of funds in which the Republic of Cuba, its agencies, instrumentalities and/or other sanctioned Cuban individuals or entities or a Cuban national had an interest were being made through the correspondent account at JPMC.

f.   Nevertheless, the bank failed to cease and continued to make further transfers which conferred a substantial economic benefit to the Republic of Cuba, its agencies, instrumentalities and/or other sanctioned Cuban individuals or entities as well as JPMC, failing to block such funds and eliminating payment data that would have revealed the involvement of the Republic of Cuba and Cuban agencies and instrumentalities, advising the entities and individuals engaging in Prohibited Transactions on how to conceal their involvement in U.S. dollar transactions, and instructing employees to take specified steps to remove references to the Republic of Cuba, its agencies, instrumentalities and/or other sanctioned Cuban individuals or entities in payment messages.

### ***Plaintiff's Injuries***

38.   Plaintiff's was injured as a result of JPMC's conduct, suffering

damages to property, the inability to collect on their judgment, in the amount of at least $14.5 million dollars.

39.    Had not JPMC perpetrated the racketeering scheme, funds would have been frozen by OFAC and the Plaintiff would have been able to collect the foregoing funds against their judgment in 2007 and thereafter when attachment and levy were served upon JPMC.

40.    As damages, Plaintiff is entitled to recover from JPMC: actual, consequential and incidental damages, in the amount to be determined at trial, but believed to be no less than $14.5 million dollars; treble damages of $43.5 million dollars; attorney's fees and costs; interest at the legal rate; and such other and further relief as the Court deems appropriate.

WHEREFORE, the Plaintiff respectfully demands that a judgment be entered in this action in her favor against the Defendant awarding the Plaintiff as follows:

A.    Actual, consequential and incidental damages in the amount to be determined at trial, including the unpaid balance of the SD NY Judgment plus all accrued interest due.

B.    Treble damages not less than three times the unpaid balance of the SD NY Judgment plus all accrued interest due.

C.    Reasonable attorneys fees, costs and litigation costs.

D.     Prejudgment interest as provided in the SD NY Judgment, and post judgment interest, and

E.     Such other and further relief as this Court deems appropriate.

### COUNT IV –- RICO: MONEY LAUNDERING

41.    Plaintiff realleges and incorporate by reference paragraphs 1 through 20, and 27 through 40 of this Complaint as if fully stated herein.

42.    At all relevant times, JPMC and the Republic of Cuba, its agencies, instrumentalities and other sanctioned Cuban individuals or entities, were an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that was engaged in and the activities of which affected, interstate or foreign commerce.

43.    At all relevant times, JPMC was a "person" within the meaning of 8 U.S.C. § 1961(3).

44.    Defendant JPMC received income that was derived, directly or indirectly, from a pattern of racketeering activity in which JPMC participated as a principal, and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in the acquisition of an interest in, or the establishment or operation of, an enterprise, in violation of 18 U.S.C. § 1962(a).

45.    Based upon information and belief, JPMC and the Republic of

Cuba, its agencies, instrumentalities and other sanctioned Cuban individuals or entities conducted or participated and/or conspired to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, proximately causing injury to the Plaintiff's, in violation of 18 U.S.C. § 1962(c) and (d).

46.    JPMC engaged in the following predicate acts constituting a "pattern of racketeering," as defined by 18 U.S.C. § 1961(1):

### *Laundering of Monetary Instruments*

a.  As set forth specifically in the factual allegations of this Complaint, incorporated by reference herein, between at least as early as December 12, 2005 and continuing until at least March 31, 2006 knowingly transferred funds belonging to the Republic of Cuba, its agencies, instrumentalities and other sanctioned Cuban individuals or entities through a correspondent account.

b.  The funds that JPMC caused to be transferred were the proceeds of specified unlawful activity, including wire fraud under 18 U.S.C. § 1343.

c.  JPMC knew that the funds it transferred were the proceeds of specified unlawful activity, including wire fraud under 18 U.S.C. § 1343.

d. JPMC made these transfers with knowledge that they were designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

e. There were numerous instances in which funds were transferred under these circumstances.

f. These fund transfers constitute the laundering of monetary instruments under 18 U.S.C. § 1956.

g. Laundering of money instruments is "racketeering activity" under 18 U.S.C. § 1961(1).

h. Upon learning in November 2005 that it was processing wire transfers which JPMC knew to have involved the Republic of Cuba, its agencies or instrumentalities, and/or Cuban individuals or entities on the SDN list, JPMC continued to process them. JPMC concealed that the funds involved in the illicit or Prohibited Transactions were the true property of the Republic of Cuba, or its agencies and instrumentalities in order to avoid the application of U.S. Sanctions, and evade execution upon the funds by judgment creditors of the Republic of Cuba.

### *Plaintiff's Injuries*

47.    Plaintiff was injured as a result of JPMC's conduct, suffering damages to property arising from their judgment, in the amount of $14.5 million dollars.

48.    Plaintiff was injured as a result of JPMC's conduct, suffering damages to property arising from their judgment, in the amount of at least $14.5 million dollars.

49.    Had not JPMC perpetrated the racketeering scheme, funds would have been frozen by OFAC and the Plaintiff's would have been able to collect on their judgment.

50.    As damages, Plaintiff is entitled to recover from JPMC: actual, consequential and incidental damages, in the amount to be determined at trial, but believed to be no less than $14.5 million; treble damages or no less than $43.5 million; attorney's fees and costs; interest at the legal rate; and such other and further relief as the Court deems appropriate.

51.    WHEREFORE, the Plaintiff respectfully demands that a judgment be entered in this action in her favor against the Defendant awarding the Plaintiff as follows:

      A.    Actual, consequential and incidental damages in the amount to be determined at trial, including the unpaid balance of the SD NY

Judgment plus all accrued interest due.

B.     Treble damages not less than three times the unpaid balance of the SD NY Judgment plus all accrued interest due.

C.     Reasonable attorneys fees, costs and litigation costs.

D.     Prejudgment interest as provided in the SD NY Judgment, and post judgment interest, and

E.     Such other and further relief as this Court deems appropriate.

### COUNT V -- Fraudulent Transfer:
### New York Debtor and Creditor Law § 279

52.     Plaintiff realleges and incorporates by reference paragraphs 1 through 20, and paragraphs 27 through 40 of this Complaint as if fully stated herein.

53.     At all relevant times, JPMC knew or should have known that it was illegally processing transactions for agencies and instrumentalities of the Republic of Cuba and that the Republic of Cuba was therefore the beneficial owner of millions of dollars in assets involved in the illicit transactions described above in which JPMC participated; and processing the payments involved in these illicit transactions for the benefit of the Republic of Cuba's state owned or operated banking institutions and the Republic of Cuba's agencies and instrumentalities would require the services of U.S. financial

institutions or JPMC's New York branch.

54.    At all relevant times, JPMC was required by applicable U.S. Sanctions Laws to block Prohibited Transactions or transactions involving the Republic of Cuba's banking institutions, and various other agencies and instrumentalities of the Republic of Cuba and to report those blocked transactions to OFAC in a timely manner.

55.    In furtherance of JPMC's unlawful attempt to move Prohibited Transactions through the U.S. financial system, JPMC willfully ignored the status of agencies and instrumentalities of the Republic of Cuba as the beneficial owners of millions of dollars that were handled and processed by JPMC.

56.    Because of JPMC's unlawful conduct, millions of dollars in which the Republic of Cuba or its agencies and instrumentalities had an ownership interest were illicitly processed through JPMC without the required notice to OFAC and New York's banking regulators.

57.    JPMC was prohibited by law from engaging in the Prohibited Transactions and transfers that it passed through its New York branch.  In addition, JPMC was required by law to report to OFAC the participation of Republic of Cuba entities or instrumentalities in the illicit transactions, and to refuse to effect transfers involving those entities, and to block the assets

involved in those transactions.

58.    JPMC were beneficiaries of these Prohibited Transactions.  JPMC directly benefited its involvement, electronic transfer and/or receipt of Prohibited Transactions by charging and collecting substantial fees and commissions in exchange for the services that JPMC provided.

59.    The aforementioned illicit transfers were fraudulent, under New York law, because the Prohibited Transactions and transfers made were not for fair consideration, and JPMC as transferees, lacked good faith, and the purpose of the transfer was to frustrate creditors of the Republic of Cuba, including Plaintiff.

60.    By 2005, Plaintiff's claims against the Republic of Cuba and its agencies and instrumentalities had fully accrued, making them creditors of the Republic of Cuba and its agencies and instrumentalities, under New York law.

61.    JPMC's illicit transfers of and/or Prohibited Transactions in the Republic of Cuba's assets facilitated by JPMC completely disposed of the funds transferred therein, by causing the funds at issue to be removed from the United States, making them uncollectable and un-attachable by the Plaintiff. These illicit transfers had the effect of hindering, delaying and defrauding the Republic of Cuba's creditors, including Plaintiff.

62.    Plaintiff was injured as a result of JPMC's conduct, suffering

damages as a result of the Plaintiff's inability to collect upon the funds of the judgment debtor, the Republic of Cuba or its agencies or instrumentalities, which JPMC caused to be completely disposed of.

63.    Had JPMC complied with applicable New York and U.S. Sanctions laws and regulations, assets of the Republic of Cuba and its agencies and instrumentalities moved outside of United States in the Prohibited Transactions or illicit transfers would have been blocked and held, and JPMC would have been able to attach these blocked assets in satisfaction of Plaintiff's judgment in conformity with the SD NY Court's orders and writs.

64.    Plaintiff is entitled to recover from JPMC compensatory damages in equivalent value to the assets of the Republic of Cuba and its agencies and instrumentalities that JPMC illicitly transferred outside of the United States as described above, in a total amount to be determined at trial; interest at the legal rate; and such other and further relief as the Court deems appropriate.

WHEREFORE, the Plaintiff respectfully demands that a judgment be entered in this action in her favor against the Defendant awarding the Plaintiff as follows:

A.    Actual, consequential and incidental damages in the amount to be determined at trial, including the unpaid balance of the SD NY Judgment plus all accrued interest due.

B.      Treble damages not less than three times the unpaid balance of the SD NY Judgment plus all accrued interest due.

C.      Reasonable attorneys fees, costs and litigation costs.

D.      Prejudgment interest as provided in the SD NY Judgment, and post judgment interest, and

E.      Such other and further relief as this Court deems appropriate.

JURY TRIAL DEMANDED

Date:       August 20, 2015.                   Respectfully submitted,

_/s/Rhonda A. Anderson_____
RHONDA A. ANDERSON
Fla. Bar No. 708038
Admitted Pro Hac Vice
*Attorney for Plaintiff*
RHONDA A. ANDERSON, P.A.
2655 LeJeune Road, Suite 540
Coral Gables, Florida 33134
Telephone: (305) 567-3004
Facsimile: (305) 476-9837
E-Mail: randersonlaw@gmail.com

*/s/ Ramon A. Hernandez, Esq*
RAMON A. HERNANDEZ
Fla. Bar No.101515
Admitted Pro Hac Vice
*Attorney for Plaintiff*
40 N.W 3rd Str, Suite 200
Miami, Florida 33128
Telephone: (305) 440-9405
Email: rayhernandezesq@gmail.com